UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

DOMINICK J. DINAPOLI,                                :

                    Plaintiff,            :

                -against-                 :

DPA WALLACE AVE II, LLC and                 :
NEW YORK CITY HOUSING AUTHORITY,
                                                         :

                  Defendants.
                                                         :
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 23, 2009

07 Civ. 1409 (PAC)

<u>MEMORANDUM ORDER</u>

HONORABLE PAUL A. CROTTY, United States District Judge:

Defendants DPA Wallace Ave. II, LLC ("DPA Wallace") and the New York City Housing Authority ("NYCHA") (collectively "Defendants"), move separately to dismiss an amended complaint filed by <u>pro se</u> Plaintiff Dominick J. DiNapoli. Plaintiff, who claims that he is disabled, alleges a violation of various federal and state anti-discrimination laws based on the Defendants' failure to provide him with easy access from his building's elevator to the street between the hours of 5 p.m. and 8 a.m., essentially locking Plaintiff into or out of his apartment during these times. For the reasons discussed below, NYCHA's motion to dismiss is GRANTED, and DPA Wallace's motion is GRANTED in part and DENIED in part.

## **BACKGROUND**[1]

Plaintiff is a 62-year-old tenant living on the fourth floor of an apartment building located at 2134 Wallace Avenue in Bronx County, New York. He has lived there since September 1,

---

[1] The Court derives the facts in this section from Plaintiff's Amended Complaint, except where otherwise noted. For the purposes of a motion to dismiss, the Court accepts the factual allegations in the complaint as true. <u>Overton v. Todman & Co.</u>, 478 F.3d 479, 483 (2d Cir. 2007).

2003. (See Amended Complaint ("Am. Compl.") Ex. 2 at 1, 2.)[2] Plaintiff alleges that he suffers from various physical ailments and disabilities that limit his mobility and cause him severe pain and other associated discomforts. (Id. Ex. 2 at 3, id. Ex. 2 at Ex. C and D.)[3] Occasionally he is unable to walk up or down steps. (Id. at 8.) The Department of Veterans Affairs recognizes Plaintiff as a disabled veteran and helped him obtain his current residence through the United States Department of Housing and Urban Development's ("HUD") Housing Choice Voucher Program ("Section 8 program"). (Id. Ex. 2 at 2, 4.) Since September 2003, NYCHA, as administrator of the Section 8 program, has subsidized a portion of Plaintiff's rent and Plaintiff has been responsible for the remainder. (See Declaration of Jeffrey Niederhoffer ("Niederhoffer Decl.") Ex. A, B, and K). DPA Wallace is the landlord and owner of 2134 Wallace Avenue. It acquired the building from the prior owner on December 16, 2005. (See Am. Compl. at 5; see also id. Ex. 2 at 2.).

Plaintiff alleges a host of problems with his living situation, most of which are more appropriate for housing court.[4] While Mr. DiNapoli's factual allegations are not completely clear, the crux of his Complaint is that DPA Wallace restricts the elevator from travelling to the building's basement between 5 p.m. and 8 a.m. (See Am. Compl. 3-4, 8.) The basement door is the only entrance and exit to the building that does not have stairs and is also the closest entrance to the area where Plaintiff parks his car. Much of Plaintiff's Complaint concerns his request for

---

[2]   Exhibit 2 to the Amended Complaint is Plaintiff's original Complaint filed on February 27, 2007. The Amended Complaint does not contain many of the relevant facts alleged in the original Complaint, but those facts are necessary to understand Plaintiff's current action against DPA Wallace and the NYCHA.

[3]   Well after the briefing schedule was complete Mr. DiNapoli sent the Court a letter further explaining his disabilities. (See DiNapoli March 12, 2009 Letter.) Mr. DiNapoli attaches a letter from a doctor who presumably works at the Bronx VA Hospital, stating that Mr. DiNapoli "is unable to climb or descend stairs and must be allowed to use a handicap accessible entrance and exit." (Id.) Plaintiff also attaches a computerized evaluation note presumably from the Bronx VA Hospital listing a variety of ailments, including, but not limited to, back pain, dyspepsia, herniated disc, internal hemorrhoids, and osteoarthritis. (Id.)

[4]   These complaints include vermin infestation, lack of heat and hot water, disruptive neighbors, and many other associated problems that are irrelevant to the claims asserted here. (See Am. Compl. at 9.)

keys to the elevator and to rear-door entrances to the building. Plaintiff alleges that the previous building owners gave him keys to the elevator, keys to the basement rear door entrance, and keys to a first-floor rear door entrance that involved a 12-step climb. These rear entrances are allegedly much easier for Plaintiff to access than the front door of the building, which contains five steps and is a long walk from where he parks. (See id. Ex. 2 at 4-5.) Plaintiff alleges that DPA Wallace managers, unlike the prior owner, do not accommodate his disability because they will not give him a key to unlock the elevator to reach the basement, nor will they give him a key to the first-floor rear door entrance, which would presumably provide him access to the elevator even when it was restricted from going to the basement. DPA Wallace allegedly does provide Mr. DiNapoli with a key to the rear basement entrance, but without a key to unlock the elevator Mr. DiNapoli cannot access his apartment from the basement—the only exit or entrance without steps—between 5 p.m. and 8 a.m. (See Am. Compl. at 3-4; id. Ex. 2 at 5-7.)

Plaintiff claims that NYCHA denied his requests for accommodation and assistance in relieving the elevator access problem. Plaintiff allegedly wrote and spoke to NYCHA numerous times regarding his situation, but to no avail. (See Am. Compl. at 6.) Plaintiff alleges that DPA Wallace's failure to provide him keys and NYCHA's failure to accommodate his complaints show that Defendants discriminate against him as a disabled individual.

Plaintiff filed his original Complaint on February 27, 2007 against DPA Wallace and the City of New York, alleging violations of the Americans with Disabilities Act ("ADA"), Rehabilitation Act of 1973 ("Rehabilitation Act"), Fair Housing Amendments Act of 1988 ("FHAA"), Equal Opportunity Law, U.S. Constitution, Civil Rights Act, and the Declaration of Independence. Plaintiff further alleged that Defendants violated HUD rules, the Heyer v. New

York City Housing Authority[5] Stipulation and Order of Settlement, the decision in Williams v. New York City Housing Authority,[6] and state laws pertaining to the administration of the Section 8 program. (See Am. Compl. Ex. 2 at 36.)  Plaintiff also sought monetary damages of more than $2 million. (Id. Ex. 2 at 39.)

DPA Wallace filed its motion to dismiss on April 13, 2007 and the City of New York followed with its motion to dismiss on May 11, 2007.  On March 11, 2008, the Court granted New York City's motion to dismiss but reserved judgment on DPA Wallace's motion pending service on and the appearance of NYCHA.  Plaintiff then filed his Amended Complaint on April 24, 2008, naming DPA Wallace and NYCHA as defendants.  DPA Wallace filed its motion to dismiss the Amended Complaint on August 1, 2008 and NYCHA followed with its motion to dismiss on August 8, 2008.

## DISCUSSION

### I.   Applicable Standard of Review

In deciding a Rule 12(b)(6) motion, the court must accept the factual allegations in the complaint as true, and draw all reasonable inferences in plaintiff's favor. Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007).  A complaint must plead enough facts to be plausible on its face, Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)), and the complaint may be dismissed where it "appears beyond doubt" that the plaintiff can prove no facts that would entitle him to relief. Allen v.

---

[5] Under the Heyer v. New York City Housing Authority Stipulation and Order of Settlement, the NYCHA agreed to provide individualized request accommodations to handicapped individuals making use of their Section 8 vouchers. (See Niederhoffer Decl. Ex. G.)  NYCHA has not violated the Heyer Stipulation because that Stipulation discusses how the NYCHA will accommodate disabled persons in their direct participation in the Section 8 program, not how the NYCHA should work with existing private landlords to make the accommodations suggested by Mr. DiNapoli.

[6] Williams v. New York City Housing Authority, No. 81 Civ. 1801 (RJW), 1994 U.S. Dist. LEXIS 9058 (S.D.N.Y. July 5, 1994), is an inapplicable case which developed procedures for tenant challenges of Housing Authority decisions to terminate payment of Section 8 subsidies.

WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991) (citation omitted).  Although "the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice." Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996).

Courts hold complaints prepared by pro se plaintiffs to "less stringent standards than formal pleadings drafted by lawyers." Boddie v. Schnieder, 105 F.3d 857, 860 (2d Cir. 1997) (citing Haines v. Kerner, 404 U.S. 519, 520 (1972)).  "In essence, a pro se litigant should be afforded every reasonable opportunity to demonstrate that he has a valid claim." Satchell v. Dilworth, 745 F.2d 781, 785 (2d Cir. 1984).

**II.	Analysis**

**A.  Claims Against NYCHA**

Mr. DiNapoli alleges that NYCHA failed to address his complaints about his living conditions and his complaints of discrimination.  NYCHA is purportedly liable to Plaintiff based on its administration of the Section 8 program.  Plaintiff cites no law or regulation that holds NYCHA liable for failing to prevent a private landlord from allegedly discriminating against a Section 8 tenant, nor can the Court find any support for this type of action.  The cases that discuss liability for NYCHA typically involve allegations of discrimination in the manner that NYCHA administers its housing program. See, e.g., Sierotowicz v. N.Y. City Hous. Auth., 214 Fed. Appx. 101 (2d Cir. 2007); Davis v. N.Y. City Hous. Auth., 278 F.3d 64 (2d Cir. 2002). That is not Mr. DiNapoli's claim here; in fact, he makes no claim that he was denied the benefits of the Section 8 program.  The court "will dismiss a complaint that 'consist[s] of nothing more than naked assertions, and set[s] forth no facts upon which a court could find a [constitutional] violation.'" Mitchell v. Keane, 974 F. Supp. 332, 338 (S.D.N.Y. 1997) (quoting Martin v. N.Y. State Dep't of Mental Hygiene, 588 F.2d 371, 372 (2d Cir. 1978)); see also Alfaro Motors, Inc.

v. Ward, 814 F.2d 883, 887 (2d Cir. 1987) ("[A] complaint must contain specific allegations of fact which indicate a deprivation of constitutional rights; . . . broad, simple, and conclusory statements are insufficient to state a claim."). The Amended Complaint contains no allegations that NYCHA itself discriminated against the Plaintiff, and the Court finds no avenue for Mr. DiNapoli to sue NYCHA for failing to prevent DPA Wallace's alleged discrimination.

Dismissal of the claims against NYCHA becomes even more clearly appropriate upon a review of the specific statutes and regulations that Mr. DiNapoli cites in his Amended Complaint. For instance, Mr. DiNapoli cannot state a claim against NYCHA under the ADA, the Rehabilitation Act or the FHAA. Under Title II of the ADA, "a plaintiff must allege that (1) she is an individual with a disability; (2) she is an otherwise qualified individual with a disability; (3) she is excluded from participation in or being denied the benefits of some service, program, or activity by reason of her disability; and (4) the entity which provides the service, program, or activity is a public entity." Bey v. City of New York, No. 97 Civ. 4800 (DLC), 1999 U.S. Dist. LEXIS 11379, at *10 (S.D.N.Y. July 27, 1999). The requirements for stating a claim under Section 504 of the Rehabilitation Act are virtually identical. See Rothschild v. Grottenthaler, 907 F.2d 286, 289-90 (2d Cir. 1990); Clarkson v. Coughlin, 898 F. Supp. 1019, 1036-37 (S.D.N.Y. 1995). Under the third part of this test, there is no evidence or allegation that NYCHA has denied Mr. DiNapoli the benefits of the Section 8 program. NYCHA is not responsible under these Acts for any alleged discrimination by DPA Wallace simply because NYCHA administers the Section 8 program.

Likewise, Plaintiff has no claim against NYCHA under the FHAA. That Act makes it unlawful to discriminate on the basis of a handicap, "in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such

6

dwelling." 42 U.S.C. § 3604(f)(2); Shapiro v. Cadman Towers, Inc., 51 F.3d 328, 333 (2d Cir. 1995). Discrimination under the FHAA includes failure to make reasonable accommodations in rules, policies, practices, or services so that the handicapped individual may have an equal opportunity to use and enjoy the dwelling. 42 U.S.C. § 3604(f)(3)(B); 24 C.F.R. § 100.204(a); City of Edmonds v. Oxford House, Inc., 514 U.S. 725, 729 (1995). Again, Mr. DiNapoli has failed to state how NYCHA, as administrator of the Section 8 program, participates in the alleged discrimination against him by failing to take action against DPA Wallace, a private landlord.

Giving Mr. DiNapoli's Amended Complaint the most liberal reading, as this Court must, see Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000), Plaintiff has not stated a claim against NYCHA. Accordingly, Defendant NYCHA's motion to dismiss is granted.

### B. Claims Against DPA Wallace

Mr. DiNapoli claims that DPA Wallace violated the ADA, the Rehabilitation Act, the FHAA, U.S. Constitution, the Declaration of Independence, the Civil Rights Act, HUD Rules, and state laws pertaining to the administration of the Section 8 program. Of this grab-bag of complaints, the only colorable claim against DPA Wallace under the facts of this case is the alleged violation of the FHAA.[7]

---

[7] The only other claim that Plaintiff could potentially bring against DPA Wallace is under the Rehabilitation Act. Section 504 of the Rehabilitation Act states that qualified disabled individuals may not be "excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). To prove a violation of Section 504 a plaintiff must show:

> (1) that he has a disability for purposes of the Rehabilitation Act, (2) that he is 'otherwise qualified' for the benefit that has been denied, (3) that he has been 'denied the benefits' solely by reason of his disability, and (4) that the benefit is part of a 'program or activity receiving Federal financial assistance.'

Blatch ex rel. Clay v. Hernandez, 360 F. Supp. 2d 595, 628 (S.D.N.Y. 2005) (citing Flight v. Gloeckler, 68 F.3d 61, 63 (2d Cir. 1995)).
    Since Mr. DiNapoli cannot show that he has been denied the benefits of any "program or activity" receiving federal financial assistance solely by reason of his disability, he cannot state a claim under this Act.

DPA Wallace argues that the Court should not reach the merits of any federal discrimination claim because the claims are either time-barred or precluded based on Mr. DiNapoli's failure to exhaust administrative remedies. DPA Wallace states that Mr. DiNapoli failed to file his federal discrimination claims within 90 days of receiving a "Determination and Order" from the New York State Department of Human Rights ("NYSDHR") on July 27, 2006. (See Affirmation of Laura Shockley ("Shockley Affirmation") Ex. 4.) Accordingly, DPA Wallace states that any claim arising from events that occurred before Plaintiff filed his complaint with the NYSDHR is time-barred.[8] DPA Wallace also states that claims arising from events occurring after Mr. DiNapoli's NYSDHR filing are precluded because Mr. DiNapoli failed to first file an administrative complaint, as DPA Wallace claims he must do.

DPA Wallace confuses the procedural requirements for filing an employment discrimination complaint under Title VII of the Civil Rights Act of 1964 with the requirements for bringing a suit under the FHAA. A plaintiff must bring a Title VII claim within 90 days after receiving a "right-to-sue" letter from the United States Equal Employment Opportunity Commission ("EEOC"). See Cornwell v. Robinson, 23 F.3d 694, 706 (2d Cir. 1994). This administrative requirement does not apply to claims under the FHAA. See Ward v. Harte, 794 F. Supp. 109, 113 (S.D.N.Y. 1992) ("[T]he enforcement structure of the Fair Housing Act is significantly different from that of either Title VII or the ADEA: a plaintiff need not pursue any administrative remedies at all before filing a suit under the [Fair Housing Act].")[9]; see also 42

---

[8] It is unclear of the exact date that Mr. DiNapoli filed his claim with the NYSDHR. His complaint is dated March 30, 2006, but the NYSDHR's Determination and Order states that it was filed on April 6, 2006. (See Shockley Affirmation Ex. 1, Ex. 4.)

[9] Congress passed the FHAA in 1988, extending the Fair Housing Act's ("FHA") requirement of equal housing opportunities to cover handicapped individuals. See Salute v. Stratford Greens Garden Apts., 136 F.3d 293, 299 (2d Cir. 1998).

U.S.C. § 3613(a)(1)(A).  As Mr. DiNapoli is not suing for employment discrimination, he may bring his claims under the FHAA.

A claim of discrimination under the FHAA "includes 'a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [handicapped] person[s] equal opportunity to use and enjoy a dwelling.'" Oxford House, 514 U.S. at 729 (citing 42 U.S.C. § 3604(f)(3)(B)).  To properly allege a claim of discrimination based on a defendant's refusal to make reasonable accommodations, a plaintiff must show that: "(1) he suffers from a handicap as defined by the FHAA; (2) defendants knew or reasonably should have known of the plaintiff's handicap; (3) accommodation of the handicap 'may be necessary' to afford plaintiff an equal opportunity to use and enjoy the dwelling; and (4) defendants refused to make such accommodation." Bentley v. Peace & Quiet Realty 2 LLC, 367 F. Supp. 2d 341, 345 (E.D.N.Y. 2005) (citing United States v. Cal. Mobile Home Park Mgmt. Co., 107 F.3d 1374, 1380 (9th Cir. 1997)).

Accommodations required under the FHAA must be "reasonable and necessary to afford the handicapped individual an equal opportunity to use and enjoy a dwelling." Hubbard v. Samson Mgmt. Co., 994 F. Supp. 187, 190 (S.D.N.Y. 1998) (citations omitted).  Courts conduct a fact-specific analysis of whether an accommodation was required, balancing the benefits to the plaintiff against the burdens to the defendant. Id. (citations omitted).  Courts typically find an accommodation reasonable "when it imposes no undue financial or administrative hardships on the defendant . . . and when it does not undermine the basic purpose of the [challenged] requirement." Id. (citations omitted).  The accommodation should not extend a preference, however, to the handicapped resident over the other residents, as opposed to providing equal

opportunity. Id. (citing United States v. Cal. Mobile Home Park Mgmt. Co., 29 F.3d 1413, 1418 (9th Cir. 1994)).

At this stage in the proceeding, taking Mr. DiNapoli's allegations on their face, Plaintiff has alleged that DPA Wallace discriminated against him under the FHAA by not accommodating his request for access to the elevator without using stairs. First, Plaintiff alleges that he is handicapped and that using the stairs causes him pain. Second, the Amended Complaint clearly alleges that DPA Wallace knew or reasonably should have known about Plaintiff's disability. (See Am. Compl. Ex. 2 at 8 (noting that DPA Wallace ignored Mr. DiNapoli's repeated requests for accommodation).) Third, Mr. DiNapoli alleges that without an accommodation—access to the elevator through the basement—there are times he cannot get to his apartment. He alleges that he has been "locked in" to his apartment because he was physically unable to climb down steps. (Id. at 8.) Fourth, and finally, Mr. DiNapoli alleges throughout his Amended Complaint that DPA Wallace refused to provide him with a key. Mr. DiNapoli has properly alleged all four elements of a claim for failure to make reasonable accommodations under the FHAA. See Bentley, 367 F. Supp. 2d at 345.

Mr. DiNapoli's Amended Complaint is confusing and inconsistent, and it may or may not have merit; but assuming the allegations of his Amended Complaint are true, and drawing all inferences in favor of the Plaintiff, the Court cannot say that Mr. DiNapoli fails to plead enough facts to create a plausible cause of action. Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir. 2000) ("[C]ourts must construe pro se pleadings broadly, and interpret them to raise the strongest arguments that they suggest.") (internal quotations and citations omitted). This case may continue on the single issue of whether DPA Wallace improperly restricts Plaintiff's access to his apartment under the FHAA by failing to provide him with keys to the elevator or to the first floor

rear door. Further proceedings are necessary to determine whether the factual allegations are well founded, and of course DPA Wallace is free to demonstrate that the requested accommodations are unreasonable. At this stage, it suffices to say that Plaintiff has stated a claim that DPA Wallace discriminates against him under the FHAA.

## CONCLUSION

Accordingly, the NYCHA's motion to dismiss is GRANTED and DPA Wallace's motion to dismiss is GRANTED in part and DENIED in part. The parties should appear for the next conference in this matter at 3:15 p.m. on Monday, April 13, 2009 in Courtroom 6A. Requests for adjournment of the conference will be considered only if made in writing and otherwise in accordance with the undersigned's Individual Practices.

Dated: New York, New York
       March 23, 2009

SO ORDERED

*[signature]*

PAUL A. CROTTY
United States District Judge

Copies to:

Dominick J. DiNapoli
P.O. Box 287
Throgs Neck, NY 10465